# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

COREY S. GRESHAM,

                                     Plaintiff,

            v.

JACK CARSON, et. al.,

                                     Defendants.          Case No. 3:12-cv-00008-SLG

## ORDER RE ALL PENDING MOTIONS

Mr. Gresham, a prisoner representing himself, filed his Complaint in this action on January 17, 2012.[1] The defendants include (1) the Municipality of Anchorage, the Anchorage Police Department, and three police officers from the Anchorage Police Department, including Chief Mark Mew and officers Jack Carson and Eric Smith (hereinafter "the Municipal Defendants"); (2) Joseph Masters, the Commissioner of the Alaska Department of Public Safety; (3) two individual Alaska State Troopers, Michael Ingram and Kyle Young (hereinafter the "Trooper Defendants");[2] and (4) Matanuska Electric Association (hereinafter "MEA"). The Complaint asserts claims under 42 USC §§ 1983 and 1985 and alleges that the defendants entered a "chain conspiracy to deprive plaintiff of guaranteed constitutional rights" in the course of Mr. Gresham's

---

[1] Compl. (Docket 1).

[2] On February 10, 2012, this court dismissed the Alaska State Troopers as immune from suit under the Eleventh Amendment. Docket 20 at 1. A third individual, Joseph Hazelaar, was also identified as an Alaska State Trooper in Mr. Gresham's complaint, but he has not appeared in this action. *See* Compl. at 4 (Docket 1); Text Order (Docket 68). To date, no executed summons has been returned as to Mr. Hazelaar.

arrest on November 30, 2010 and subsequent criminal prosecution in federal court.  Mr. Gresham seeks monetary relief as well as declaratory or injunctive relief.[3]

There are currently five motions pending before the court.  On February 13, 2012, the Municipal Defendants filed a Motion to Dismiss Municipal Defendants.[4]  On February 21, 2012, Joseph Masters filed a Motion to Dismiss and Alternative Motion for Summary Judgment.[5]  On March 7, 2012, the Trooper Defendants filed a Motion for Summary Judgment.[6]  And on May 18, 2012, MEA filed a Motion for Summary Judgment.[7]  Mr. Gresham filed responses in opposition to each of these motions.  All four motions have now been fully briefed.  Oral argument was not requested on any of the motions and was not necessary to this court's determination of these motions.

On July 3, 2012, Mr. Gresham filed a Motion to Stay Proceedings, seeking to stay this action until August 3, 2012.[8]  As that date has now elapsed, that motion is DENIED as moot.

## FACTUAL BACKGROUND

The factual allegations in Mr. Gresham's complaint are as follows: On November 30, 2010, law enforcement officers entered a residence at 1100 West Fairview Loop in

---

[3] Compl. at 11.

[4] Municipal Mot. to Dismiss (Docket 21).

[5] Masters Mot. to Dismiss (Docket 28).

[6] Trooper Mot. for Summ. J. (Docket 34).  The Alaska State Troopers filed this motion along with the individual Troopers.  But as the Alaska State Troopers are no longer parties to this case, *see* docket 20, the motion will be treated as if it had been filed only by the individual Troopers.

[7] MEA Mot. for Summ. J. (Docket 60).

[8] Mot. to Stay (Docket 66).

Wasilla, Alaska pursuant to a search warrant issued by a U.S. Magistrate Judge.[9] Mr. Gresham alleges that the property was not his residence, but he was a visitor at that residence.[10] Among the officers who entered the Fairview Loop residence were four defendants named in this action: Alaska State Troopers Michael Ingram and Joseph Hazelaar and APD Officers Jack Carson and Eric Smith.[11] The officers searched the residence, arrested Mr. Gresham, and transported him first to the FBI building in Anchorage for questioning and then to the Anchorage Correctional Complex.[12]

In his Complaint, Mr. Gresham describes the circumstances of his arrest as follows:

> 20. When plaintiff heard officers were looking for him, plaintiff slowly opened the bedroom door and was confronted by multiple officers and their tactical weapons aimed at him.
>
> 21. Plaintiff was ordered to get his hands up and to crawl to their location, which was about 25 feet away in the living room. There was a hallway that connected all of the bedrooms of the home. This hallway gave full access, and the only access available to the living room from any one of the bedrooms.
>
> 22. The officers commanded plaintiff to crawl to them from the rear bedroom to their position while plaintiff was only in his boxer shorts. Plaintiff did not understand why they were looking for him or having him crawl to them in his boxer as plaintiff posed no threat to the officers.
>
> 23. Once to the officers, plaintiff was placed in handcuffs behind his back while still only in his boxer shorts. Plaintiff and Malcolm Brooks were taken into the kitchen by search team members. Plaintiff was very upset at this point and wanted to know why he was being arrested and treated this way.

---

[9] Compl. at 5.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 6-9.

24. Jack Carson stated he had a warrant to search the house, and asked plaintiff how long had he been living at the 1100 W. Fairview Loop, and had been growing marijuana. Plaintiff stated that he did not live at the residence and doesn't grow marijuana, and was only visiting for the holidays. Plaintiff asserted his residency and home was in Georgia.

25. Plaintiff then asked Jack Carson to see a copy of the warrant and asked what the warrant was for. Jack Carson told plaintiff to hold on he will get to that in a minute. Officer Carson proceeded to the bedroom where plaintiff was prior to entry, and located his travel bags and some of his clothing with identification.

26. While in the rear bedroom Officer Carson noticed a handgun next to the bed where the travel bags were. There was also a handgun case inside of the luggage with an Alaska Airlines firearms declaration tag showing that the handgun had travel with plaintiff from Georgia.

27. When Officer Carson returned from the bedroom he took some cash out of plaintiff's pants pocket and placed it on the kitchen table and asked plaintiff how he got the cash. Carson also put plaintiff Georgia Driver's License on the kitchen table. Officer Carson then asked plaintiff who the firearms belong to and if there were anymore. Plaintiff told Officer Carson they belong to the plaintiff and that he travels with firearms for his personal safety and for recreational use. Officer Carson knew plaintiff wasn't a felon and his possession was lawful.

28. During the search of the residence Officer Carson was pacing back and forth from the kitchen to the back bedroom. Plaintiff was very cold and had complained to other search team members about being cold. Plaintiff was still in his boxer shorts sitting in a chair, while still handcuffed in the kitchen, right beside the front door that had been breached by search team members. Officer Carson finally brought plaintiff some clothing.

29. Plaintiff demanded to see the warrant that Officer Carson told him to wait on, while sitting only in his boxer shorts right by the front door, that had remained open during the entire search of the residence.

30. Plaintiff was handed an old bench warrant from an unrelated traffic incident for failure to appear. Plaintiff didn't see a search warrant for 1100 W. Fairview Loop when plaintiff requested. Officer Carson then stood plaintiff up while still handcuffed. Officer Carson then put a red shirt over plaintiff head, and shoulders, put a pair of jeans on plaintiff, shoes, and no coat. Plaintiff, and Malcolm Brooks

where then transported to the FBI office in Anchorage for further questioning.

31. While being transported to the Anchorage FBI office plaintiff was placed in a civilian SUV, driven by Officer Carson. Michael Ingram sat in the backseat with plaintiff whose hands were cuffed behind his back during the transport. Ingram asked if plaintiff had any kids and about his faith.

32. Once there at the FBI building in Anchorage, plaintiff was taken to an interrogation room that had no windows, was extremely cold, and was handed a cup of water. Plaintiff was then un-cuffed from behind his back and had his right-hand handcuffed to an elevated metal railing alongside the wall.[13]

Mr. Gresham was indicted in federal court on three counts: drug conspiracy, manufacture of a controlled substance, and possession of firearms in furtherance of a crime of drug trafficking.[14] Trial was set before a U.S. District Judge and continued several times. Mr. Gresham filed a motion seeking to suppress statements that he alleged were obtained in violation of his *Miranda* rights.[15] A Magistrate Judge held an evidentiary hearing on that motion and issued a 16-page Report & Recommendation.[16] Based on that Report & Recommendation, the assigned District Judge granted in part and denied in part Mr. Gresham's motion, allowing the use of certain statements Mr. Gresham had made after finding a waiver of his *Miranda* rights.[17] Mr. Gresham also filed a pretrial motion seeking to suppress all evidence obtained through the execution

---

[13] *Id.* at 5-7.

[14] Attach. A. to Compl. at 8 (Docket 1-1). *See also USA v. Gresham et al.*, Case No. 3:10-cr-00121-HRH, Docket 1.

[15] Attach. A. to Compl. 10-11 (Docket 1-1); 18-22.

[16] *Gresham*, Case No. 3:10-cr-00121-HRH, Docket 75.

[17] *Gresham*, Case No. 3:10-cr-00121-HRH, Docket 100.

of the search warrant, asserting that the warrant was not supported by probable cause. A Magistrate Judge held a three-day hearing on that motion and issued a 48-page Report & Recommendation recommending the denial of the motion, which was subsequently adopted by the assigned District Judge.[18]  On September 12, 2011, all pending criminal charges against Mr. Gresham were dismissed without prejudice due to Speedy Trial Act violations.[19]

As noted above, Mr. Gresham filed this civil action on January 17, 2012.  Three days later, on January 20, 2012, Mr. Gresham was reindicted by a federal Grand Jury on substantially the same charges as the original indictment.[20]  On March 30, 2012, the parties stipulated in that second case to preserve and consolidate all of the pretrial motions and orders on the motions that had been entered in the dismissed case for purposes of appeal in the newly filed case.[21]  That second criminal case has not yet been concluded.[22]

Mr. Gresham's Complaint in this action asserts claims under 42 USC §§ 1983 and 1985 arising from the issuance of the search warrant for 1100 West Fairview Loop,

---

[18] *Gresham*, Case No. 3:10-cr-00121-HRH, Docket 213.

[19] Compl. at 10; *Gresham*, Case No. 3:10-cr-00121-HRH, Docket 216.

[20] *USA v. Gresham et al.*, Case No. 3:12-cr-00015-TMB, Docket 2.  Pursuant to Evidence Rule 201, this court has taken judicial notice of the court's file in that criminal proceeding.

[21] *Gresham*, Case No. 3:12-cr-00015-TMB, Docket 54 (granted at docket 57).

[22] *See generally Gresham*, Case No. 3:12-cr-00015-TMB, Docket 181 (continuing the Imposition of Sentence until September 12, 2012).  A review of the docket indicates that in April 2012, a jury returned a verdict of guilty on two counts of the indictment, and not guilty on count 3.  *See* Jury Verdict (Docket 100).

his arrest, and the criminal charges brought against him. Liberally construed,[23] the Complaint asserts that law enforcement conducted a search and seizure pursuant to an unlawful warrant, used excessive force in his arrest, and violated his *Miranda* rights in contravention of the Fourth and Fifth Amendments and 42 USC § 1983. The Complaint also asserts a claim for a chain conspiracy to deprive Mr. Gresham of his constitutional rights in violation of 42 USC § 1985.[24]

## *DISCUSSION*

### I. Jurisdiction.

This court has subject matter jurisdiction over this action pursuant to 28 USC § 1331 and 28 USC § 1343(a)(3).

### II. Analysis.

#### A. Summary Judgment Standard.

The Municipal Defendants filed a motion to dismiss all claims against them.[25] Defendant Joseph Masters filed a motion to dismiss, or alternatively a motion for summary judgment.[26]

---

[23] *See Porter v. Ollison*, 620 F.3d 952 (9th Cir. 2010) ("Prisoner *pro se* pleadings are given the benefit of liberal construction.") (citing *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam)). *See also Hebbe v. Plier*, 627 F.3d 338, 342 (9th Cir. 2010) ("[O]ur 'obligation' remains [after *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)], 'where the petitioner is *pro se,* particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'") (citation omitted).

[24] Mr. Gresham also lists the Second, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution as having been violated. However, as his Complaint contains no specific factual allegations or legal claims to explain how these Amendments were violated, this court has interpreted his Complaint as alleging the claims identified above.

[25] Municipal Mot. to Dismiss (Docket 21).

[26] Masters Mot. to Dismiss (Docket 28).

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) seeks dismissal of a claim against a party based solely upon the statements made in the complaint and answer.[27] In contrast, with a motion for summary judgment, the court considers all of the affidavits, declarations, and other cited materials in determining the motion.[28] If a motion to dismiss is filed, but the court considers materials outside the pleadings, "the motion must be treated as one for summary judgment."[29] Here, this court has considered all of the materials filed by the parties with respect to each of the defendants' pending dispositive motions, such that the motions will all be treated as motions for summary judgment.

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.[30] If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[31] When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the non-moving party's favor.[32]

---

[27] *See* Fed. R. Civ. P. 12(b)(6) and (d).

[28] *See* Fed. R. Civ. P. 56(c).

[29] Fed. R. Civ. P. 12(d).

[30] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[31] *Anderson,* 477 U.S. at 248-49.

[32] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

And yet the non-moving party may not rely on mere allegations or denials.[33] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[34] He must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[35] The evidence must be such as "would allow a reasonable fact-finder to return a verdict for the non-moving party."[36] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[37]

When granting or denying a motion for summary judgment, a court should state on the record its reasons for doing so.[38]

### B. Defendant Joseph Masters.

Mr. Masters seeks dismissal of Mr. Gresham's claims against him. In his Complaint, Mr. Gresham names Joseph Masters "individually and in his official capacity" as Commissioner of the Alaska Department of Public Safety.[39] He alleges that as Commissioner, Mr. Masters "was the overall supervisory commanding official" for the

---

[33] *Id.* at 248-49.

[34] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)).

[35] *Anderson,* 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

[36] *Id.* at 248.

[37] *Id.* at 255.

[38] Fed. R. Civ. P. 56(a).

[39] Compl. at 4.

Trooper Defendants and "was responsible for their training, supervision and conduct."[40] Mr. Gresham makes no other specific allegations regarding Mr. Masters' involvement in the facts giving rise to his claims.

Mr. Masters asserts that vicarious liability under § 1983 is not available on the sole basis of a supervisory relationship.[41] He adds that because he had no personal involvement in the Troopers' conduct alleged by Mr. Gresham, the claims against him must be dismissed. In the affidavit filed in support of motion, Mr. Masters testifies that he "had no personal involvement in any activities by employees of the Division of Alaska State Troopers concerning the plaintiff in this case, Corey S. Gresham[,]" and that he has "never directly supervised . . . the individual Alaska State Troopers named as defendants in this case."[42] In his sworn opposition, Mr. Gresham acknowledges that Mr. Masters "did not have a direct role as one of the actors in this instant civil action or directly supervise Michael Ingram, Kyle Young, and Joseph Hazelaar[.]"[43] Thus, no issue of fact has been raised as to Mr. Masters' lack of personal involvement in the conduct giving rise to Mr. Gresham's Complaint. But Mr. Gresham nonetheless asserts that he can maintain an action against Mr. Masters because "he was directly responsible for [the Trooper Defendants'] training, supervision, and conduct" as Commissioner of the Alaska Department of Public Safety.[44]

---

[40] *Id.* at 4.

[41] Masters Mem. in Supp. at 2-3 (Docket 29).

[42] Masters Aff. at 2 (Docket 29-1);

[43] Masters Opp. at 1 (Docket 42).

[44] Masters' Opp. at 1 (Docket 42).

The applicable law is clear. The United States Supreme Court has held that "[i]n a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[45] Thus, to hold a government official liable in § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[46] The Ninth Circuit has held that "[a] defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"[47]

Based on this case law, Mr. Gresham cannot sustain a § 1983 claim against Mr. Masters solely because he may have overall responsibility for the training, supervision, and conduct of the Alaska State Troopers. Mr. Gresham has failed to plead any specific alleged wrongdoing by Mr. Masters which might have a causal connection to the alleged

---

[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

[46] *Id.*, 556 U.S. 662, 676 (2009) ("respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.") (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978); *Dunlop v. Munroe*, 7 Cranch 242, 269, 3 L.Ed. 329 (1812); *Robertson v. Sichel*, 127 U.S. 507, 515–516 (1888)).

[47] *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 2101 (U.S. 2012) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)). *See also Lacey v. Maricopa Cnty.*, 2012 WL 3711591, *10 (9th Cir. 2012)

constitutional violations that are pled in Mr. Gresham's complaint.[48]  Summary judgment is therefore granted to Mr. Masters.

### C.  Defendants MOA, APD, and Mark Mew.

Based on this court's review of Mr. Gresham's Complaint, MOA, APD, and APD Chief Mark Mew are named as defendants solely in their capacity as the employers or supervisors of the individual Troopers or police officers.  As explained in the previous section, defendants cannot face supervisory liability in § 1983 actions unless they were personally involved in the alleged constitutional deprivation or there is a causal connection between their wrongful conduct and the deprivation.[49]  As Mr. Gresham has not alleged that MOA, APD, or Mr. Mew were personally involved in or engaged in any wrongdoing causally related to the alleged violations of his constitutional rights, he cannot sustain his constitutional claims against them.  MOA, APD, and Mr. Mew are therefore dismissed from this action.

### D.  Defendant MEA.

Mr. Gresham alleges that MEA violated his privacy rights by providing law enforcement officials with electrical consumption records for 1100 W. Fairview Loop in Wasilla,[50] the residence where Mr. Gresham was arrested and where the marijuana plants that form the basis of his criminal charges were located.

---

[48] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986).

[49] *Starr*, 652 F.3d at 1207.  *See also Lacey*, 2012 WL 3711591 at *10.

[50] Compl. at 4; Attach. A. to Compl. at 4, 15 (Docket 1-1).

MEA argues that it is entitled to summary judgment for two reasons.[51] First, it asserts that no legitimate expectation of privacy exists in the seven-month utility consumption history MEA provided to law enforcement. Second, it asserts that even if there was such a right to privacy, Mr. Gresham lacks standing to assert any such right related to the electrical consumption history of 1100 W. Fairview Loop, as Victoria Scheuner, and not Mr. Gresham, resided at that address. Appended to its motion is an affidavit from an MEA employee that indicates that Mr. Gresham "has never been listed as a utility subscriber for the residence at 1100 W. Fairview Loop."[52]

In his opposition, Mr. Gresham acknowledges that the electrical consumption history of a residence "can be supplied freely by an MEA representative to real estate agents or to the general public."[53] But he argues that MEA should not have provided Ms. Scheuner's name to law enforcement along with those records. Without Ms. Scheuner's name, he argues, law enforcement would not have been able to draw a connection to him at that property.[54] Thus, it is the release of Ms. Scheuner's name to law enforcement personnel that Mr. Gresham asserts violated his right to privacy.

It is undisputed that Mr. Gresham did not reside full time at 1100 W. Fairview Loop; however, he has asserted that he did spend overnights there on occasion.[55] Even if Mr. Gresham had standing to assert the privacy rights of Ms. Scheuner, the

---

[51] MEA Mem. in Supp. at 1-2 (Docket 61).

[52] Carlson Aff. at 2 (Docket 60-3).

[53] MEA Opp. at 2 (Docket 62).

[54] Pl. Resp. at 2 (Docket 62).

[55] An overnight guest may have a legitimate expectation of privacy in the home of his host. *Minnesota v. Olson*, 495 U.S. 91 (1990).

case law is well-established that a utility "customer ordinarily lacks 'a reasonable expectation of privacy' in an item, like a business record, 'in which he has no possessory or ownership interest.'"[56]  Here, the records that were produced are business records owned and possessed by MEA.  Accordingly, this court finds that, as a matter of law, Mr. Gresham had no reasonable expectation of privacy relating to the electrical consumption records of 1100 W. Fairview Loop.  Summary judgment is therefore granted to MEA.

### E.  The Trooper and Municipal Defendants.

The Trooper Defendants' Motion for Summary Judgment addresses Mr. Gresham's § 1983 claims.  The Municipal Defendants' Motion to Dismiss addresses Mr. Gresham's § 1985 chain conspiracy claim.  The Municipal Defendants specifically requested that this court decide their motion under Rule 12 rather than Rule 56.[57]  But as Mr. Gresham's opposition includes several exhibits containing matters outside the pleadings which this court has considered, this court has treated the motion as a motion for summary judgment rather than a motion to dismiss.  Both motions are addressed in this section.

---

[56] *United States v. Golden Valley Electric Association*, ___ F.3d ___, 2012 WL 3185827 *6 (9th Cir. August 7, 2012) (citing *U.S. v. Hamilton*, 434 F. Supp. 974, 980 (D. Or. 2006) (when the [defendant] used power in his home, he voluntarily conveyed that information to … his electric company.  As a result, he had no reasonable expectation of privacy in his power records.")).  *See also Samson v. State*, 919 P.2d 171, 173 (Alaska App. 1996) ("utility records are maintained by the utility and do not constitute information in which society is prepared to recognize a reasonable expectation of privacy.").

[57] MEA Reply at 2-3 (Docket 58).

       i.   *Unlawful search and seizure.*

In his Complaint, Mr. Gresham asserts that the warrant that led to his arrest and the search of 1100 West Fairview Loop was not supported by probable cause.[58] He alleges that the affidavit on which the Magistrate Judge based the warrant relied on information fraudulently provided by the Trooper Defendants and that the Trooper Defendants executed the warrant in violation of his constitutional rights. Such allegations may state a claim under the Fourth Amendment, which provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[59]

The Trooper Defendants correctly note that the probable cause issue has already been determined in the first criminal proceeding.[60] And as discussed above, by stipulation of the parties in the second criminal proceeding, the orders that had been issued in the dismissed case, including the order denying Mr. Gresham's motion to suppress, were preserved and consolidated in the new case.[61]

For the purposes of this summary judgment motion, this court views the facts in the light most favorable to Mr. Gresham. Thus, this court is accepting—without deciding and solely for the purposes of this motion—Mr. Gresham's allegations regarding the Trooper Defendants' actions relating to the warrant.

---

[58] Attach. A. to Compl. at 5-7 (Docket 1-1).

[59] U.S. Const. amend. IV.

[60] Case No. 3:10-cr-00121-HRH.

[61] *Gresham*, Case No. 3:12-cr-00015-TMB, Docket 54 (granted at docket 57).

The Trooper Defendants argue that absolute immunity protects them from any liability for their testimony in support of the issuance of the warrant, and that qualified immunity protects them from liability for their execution of the warrant.[62] As a matter of law, the Trooper Defendants' testimony in support of the warrant is protected by absolute immunity, regardless of the accuracy of that testimony.[63] Thus, any claims Mr. Gresham has asserted against the Trooper Defendants arising from their testimony in support of the warrant are DISMISSED.

The Trooper Defendants also assert that qualified immunity protects them from liability for executing the warrant because they relied on the Magistrate Judge's determination. But this court finds that dismissing Mr. Gresham's claims on the basis of qualified immunity is not appropriate at this time. In *Messerschmidt v. Millender*, the United States Supreme Court held that "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness."[64] The Supreme Court recognized an exception to qualified immunity for situations where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue."[65] Mr. Gresham's allegations that the Trooper Defendants testified fraudulently and then executed a warrant based on that testimony, if proven true, may render this exception applicable, as no reasonable officer may likely then conclude that a warrant should issue in such

---

[62] Trooper Mem. in Supp. at 6-7 (Docket 35).

[63] *See, e.g., Franklin v. Terr*, 201 F.3d 1098, 1102 (9th Cir. 2000).

[64] 132 S. Ct. 1235, 1245 (2012).

[65] *Id.* at 1245 (2012) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

circumstances. Given the highly fact-intensive inquiry that would be required to determine the issue of qualified immunity with regard to this claim, as demonstrated by the record of the suppression proceedings in the first criminal case, this court finds that it is not appropriate to decide this issue in the context of this motion for summary judgment at this time.

Alternatively, the Trooper Defendants argue that issue preclusion precludes Mr. Gresham from challenging the validity of the probable cause determinations in this civil lawsuit.[66] Issue preclusion prevents parties from relitigating an issue that has been previously determined in a prior proceeding. But traditional issue preclusion does not provide the appropriate analysis here. The United States Supreme Court's decisions in *Heck v. Humphrey*[67] and *Wallace v. Kato*[68] dictate this court's action with regard to Mr. Gresham's probable cause claims at this time. The Supreme Court has held that a plaintiff cannot challenge the fact or duration of his confinement through a civil rights action unless his conviction has been invalidated.[69] In *Heck v. Humphrey*, the Supreme Court explained:

> a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . A claim for damages bearing that

---

[66] Trooper Mem. in Supp. at 8-9 (Docket 35).

[67] 512 U.S. 477, 486-87 (1994).

[68] 549 U.S. 384 (2007).

[69] *Heck*, 512 U.S. at 486-87.

relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.[70]

 "The fact that [a plaintiff] seeks money damages . . . as a remedy does not alter this conclusion."[71]

Here, Mr. has not yet been sentenced in his criminal case, and has not yet had the opportunity to appeal the conviction. The Supreme Court's analysis in *Wallace v. Kato*[72] is instructive. There, the petitioner, Mr. Wallace, had been tried and convicted in state court. On appeal, his case was remanded for a new trial and ultimately the state dropped the charges against him. Mr. Wallace subsequently filed a § 1983 suit seeking damages arising from, among other things, his unlawful arrest. The Seventh Circuit held that Mr. Wallace's suit was time-barred, as his cause of action had accrued at the time of his arrest, not when his conviction was set aside, and he had failed to file his suit within two years of his arrest. In affirming the Seventh Circuit's decision, the Supreme Court explained:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. . . If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal;

---

[70] *Id.* (emphasis in original).

[71] *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

[72] 549 U.S. 384.

otherwise, the civil action will proceed, absent some other bar to suit.[73]

Here, unlike the plaintiff in *Wallace*, Mr. Gresham filed his civil suit within two years of his challenged arrest. But Mr. Gresham's § 1983 claims arising from the alleged lack of probable cause supporting the warrant are directly related to the criminal action pending against him. Therefore, until his criminal action is fully concluded, his § 1983 claims relating to the lawfulness of the execution of the search warrant are STAYED.[74]

  ii. Miranda *Violations.*

Mr. Gresham's Complaint alleges that statements characterized as admissions were obtained from him in violation of his *Miranda* rights.[75] Though the Trooper Defendants and the Municipal defendants seek dismissal of all of Mr. Gresham's claims, their motions do not specifically address this claim. As Mr. Gresham's *Miranda* claims are directly related to the criminal proceedings pending against him, they too are controlled by *Heck*, for the reasons discussed on pages 17-18 *supra.* Accordingly, Mr. Gresham's claims relating to the alleged violations of his *Miranda* rights are STAYED until the conclusion of his criminal proceedings.

---

[73] *Kato*, 549 U.S. at 393-94 (citing *Heck*, 512 U.S. at 487-77 n.8; *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996); *Edwards v. Balisok*, 520 U.S. 641, 649 (1997)).

[74] If the judgment in the criminal case is not set aside on appeal, then *Heck* mandates the dismissal of all of Mr. Gresham's remaining claims in this action when the criminal case is concluded. But if the final determination in the criminal case is that the warrant is determined to have been improperly issued, that evidence could be "subject to exclusion as the fruit of a constitutional violation," U.S. *v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 950 (9th Cir. 2010), and this portion of Mr. Gresham's civil § 1983 action could then proceed, absent another bar to suit.

[75] Attach. A to Compl. at 12 (Docket 1-1).

iii. *Excessive Force.*

Mr. Gresham asserts that law enforcement used excessive force on him.[76] The Trooper Defendants argue that they are protected from personal liability on this claim by qualified immunity, and that regardless, no constitutional violation occurred.[77] Mr. Gresham's description of his arrest does not always differentiate between the defendants—often referring to them collectively as "the officers"—so this analysis applies to all of the defendants who were allegedly involved in the arrest, not just the Trooper Defendants. Specifically, this analysis applies to Troopers Michael Ingram and Joseph Hazelaar and APD Officers Jack Carson and Eric Smith.

The Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly[,]" because an excessive force inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom[.]"[78] Here, however, for purposes of this motion, this court will assume that the facts regarding Mr. Gresham's arrests are as set forth by him. At issue, therefore, is—assuming the facts are proven to

---

[76] Compl. at 2.

[77] Trooper Mem. in Supp. at 9-12 (Docket 35). This court notes that Mr. Gresham's Complaint does not specifically allege that excessive force was used in his arrest; but it does include "excessive force" in a long list of results he alleges that he suffered from the acts of the defendants. Compl. at 2. As that list includes several items that clearly do not form the basis of specific causes of action— such as "loss of life" and "loss of reputation"—it is not entirely clear that Mr. Gresham is making a Fourth Amendment claim of excessive force in this suit. However, as the Trooper Defendants briefed this claim in their Motion for Summary Judgment, *see* Trooper Mem. in Supp. at 9-12, this court will address it.

[78] *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997)).

be as pled by Mr. Gresham—whether the defendants are entitled to judgment on this claim as a matter of law.

The United States Supreme Court has held that claims that law enforcement used excessive force in the course of an arrest should be analyzed under the Fourth Amendment.[79] In conducting a Fourth Amendment analysis, a court is to balance "the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake' to determine whether the force used was objectively reasonable under the circumstances."[80] As "the availability of qualified immunity also turns on the objective reasonableness of the action,"[81] this court will first examine the objective reasonableness of the force used under the Fourth Amendment.

The first step is to "assess the quantum of force used" in the arrest,[82] by considering "the type and amount of force inflicted."[83] Though Mr. Gresham has not alleged that any physical force was used on him, this does not necessarily bar his claim of excessive force, as the Ninth Circuit has held that "[a]n officer's show of force is subject to Fourth Amendment reasonableness requirements even where no actual force

---

[79] *Davis v. City of Las Vegas*, 478 F.3d 1048, 1052 (9th Cir. 2007) ("all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard.") (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)); U.S. Const. amend. IV (protecting "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]").

[80] *Davis*, 478 F.3d at 1053 (citing *Smith*, 394 F.3d at 701).

[81] *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (citations omitted).

[82] *Davis,* 478 F.3d at 1054.

[83] *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001) (citing *Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1198 (9th Cir.2000), *vacated and remanded on other grounds sub nom. Cnty. of Humboldt v. Headwaters Forest Def.*, 534 U.S. 801 (2001)).

is applied."[84]  Thus, the precedents of this circuit establish that even the threat of physical injury—such as brandishing a gun in a civilian's face, or keeping a firearm trained on the head of an infant—can constitute excessive force in certain situations.[85]

Here, however, even viewing Mr. Gresham's factual allegations in the most favorable light to him, he alleges, at most, that he found weapons pointed at him when he opened a door in the home, that he was instructed to crawl down a hallway, that he was detained inside 1100 W. Fairview Loop in his underwear, and that he was made uncomfortable by open doorways and cold rooms.[86]  This court finds that as a matter of law, these actions do not constitute the use of force, actual or threatened, of the severity and degree recognized in the case law as constitutionally excessive.[87]  Mr. Gresham also alleges that law enforcement pointed weapons at him.  While the Ninth Circuit has held that pointing or brandishing weapons at a plaintiff can in unique circumstances constitute a Fourth Amendment violation, it has done so in the context of plaintiffs who

---

[84] *Motley v. Parks*, 432 F.3d 1072, 1088 (9th Cir. 2005).  *See also Nelson v. City of Davis*, 2012 WL 2821931 *6 (9th Cir. 2012) ("force can be unreasonable even without physical blows or injuries.") (citing extensive precedent).

[85] *Motley*, 432 F.3d at 1088-89 (citing *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1014-15 (9th Cir. 2002); *McDonald v. Haskins*, 966 F.2d 292 (7th Cir.1992)).

[86] Compl. at 6-9.  The materials Mr. Gresham has provided since filing his Complaint are consistent with his original description of his arrest.  *See* Ex. A to Municipal Defs.' Opp. at 57-59 (Docket 44).

[87] *See, e.g.*, *Davis*, 478 F.3d at 1055 (severe use of force where "[Officer] Miller forcefully slammed [the plaintiff] head-first against a wall, and then swung him into another wall, also head-first, thereby breaking his neck.  Officer Miller then threw [the plaintiff] face-down onto the floor, placed his knee on his back, and then turned him over and punched him in the face."); *Smith*, 394 F.3d at 694 (severe use of force where plaintiff was thrown to the ground, bitten repeatedly by a police canine, and dragged face-down, while being pepper sprayed repeatedly); *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) ("tasers like the X26 constitute an 'intermediate or medium, though not insignificant, quantum of force'").

were not under suspicion for criminal activity at the time.[88]   Here, law enforcement

personnel were acting pursuant to a warrant to search the residence.  This court finds

that for law enforcement to train their weapons on a closed door, as a precaution

against any unknowns that may emerge, and to continue pointing their weapons from a

distance at a known suspect who emerges, is objectively reasonable under the

circumstances as pled in Mr. Gresham's Complaint.[89]

Accordingly, assuming solely for purposes of this motion that all of the facts are

as pled by Mr. Gresham with respect to the arrest, no constitutionally excessive force

was used.  Summary judgment as to both the Trooper Defendants and the Municipal

Defendants is therefore granted on this issue.

   iv.   *Chain Conspiracy.*

Mr. Gresham's Complaint alleges that the defendants conspired to deprive him of

his rights in violation of 42 USC § 1985.  Mr. Gresham claims that

> the Anchorage Police Department, Municipality of Anchorage,
> Alaska State Troopers, MEA, and a prosecutor for the United
> States Attorney's Office did conspire or go in disguise, some parties
> unknown, for the purpose of depriving, either directly or indirectly,
> the equal protection of the laws, or equal privileges and immunities
> under the Laws and Constitution.[90]

Section 1985(3) provides, in relevant part:

---

[88] *See, e.g., Robinson*, 278 F.3d at 1015 ("We agree with the Fifth Circuit that '[a] police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause *physical* injury, but he has certainly laid the building blocks for a section 1983 claim against him.') (citing *Petta v. Rivera*, 143 F.3d 895, 905 (5th Cir.1998) (citation omitted) (emphasis in original)).

[89] *See Davis*, 478 F.3d at 1053 (citing *Smith*, 394 F.3d at 701).

[90] Compl. at 2.  Elsewhere, Mr. Gresham includes in the list of alleged conspirators members of the U.S. Attorney's Office, as well as members of the federal judiciary, by name.  *See* Attach. A to Compl. at 2 (Docket 1-1).

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.[91]

Thus, § 1985(3) allows a cause of action for conspiracy to deprive a plaintiff of his constitutional rights, but only where the plaintiff has suffered an actual constitutional deprivation.[92]

As detailed above, this court has ruled that the defendants are entitled to summary judgment on all of Mr. Gresham's claims, with the exception of his challenge to the search warrant and the *Miranda* warning, as to which further proceedings have been stayed pending the conclusion of the criminal case. As a matter of law, therefore, Mr. Gresham cannot sustain an action for § 1985 conspiracy based on the dismissed claims, as he has not demonstrated any deprivation as required by § 1985(3).

As discussed above, Mr. Gresham's § 1983 claims arising from the alleged lack of probable cause for the warrant and alleged violation of *Miranda* rights are not

---

[91] 42 U.S.C.A. § 1985(3).

[92] *See also* Municipal Defs.' Mem. in Supp. at 2 (Docket 22) ("fundamental to establishing a conspiracy under § 1985 is that the complaint must allege a theory, and facts, that support an underlying § 1983 claim.").

presently before the court. That portion of Mr. Gresham's claim of conspiracy under § 1985 are inexorably linked to these § 1983 claim. Accordingly, for the reasons stated above in this court's application of *Heck* and *Wallace* to Mr. Gresham's § 1983 claims, Mr. Gresham's related § 1985 claims against the remaining defendants are also STAYED until the conclusion of his criminal proceedings.

## *CONCLUSION*

For the foregoing reasons, it is ordered:

1.      Mr. Masters' Motion at docket 28 is GRANTED. Mr. Masters is dismissed from this action.

2.      The Motion to Dismiss Municipal Defendants MOA, APD, and Mark Mew at docket 21 is GRANTED, and these three defendants are dismissed from this action.

3.      MEA's Motion for Summary Judgment at docket 60 is GRANTED. MEA is dismissed from this action.

4.      The Troopers Defendants' Motion for Summary Judgment at docket 34 and the Motion to Dismiss Municipal Defendants Jack Carson and Eric Smith at docket 21, treated as a Rule 56 motion for summary judgment, are GRANTED with respect to all of Mr. Gresham's claims raised against these defendants in this action **except** his §§ 1983 and 1985 claims relating to the execution of the search warrant and the alleged violation of *Miranda* rights as pled against Jack Carson, Eric Smith, Michael Ingram and Kyle Young.

5.      Mr. Gresham's §§ 1983 and 1985 claims relating to the execution of the search warrant and the alleged violation of his *Miranda* rights as pled against Jack Carson, Eric Smith, Michael Ingram, and Kyle Young are STAYED until the conclusion

of Case No. 3:12-cr-00015-TMB, including any appeal or the expiration of the time limit for any appeal in that case has run.  At that time, any party may file a motion to lift the stay or dismiss this matter.

6.     Mr. Gresham shall file a report with this court regarding the status of his criminal proceedings no later than November 30, 2012, and at such intervals thereafter as this court may order.

7.     Mr. Gresham's Motion to Stay Proceedings at docket 66 is DENIED as moot.

DATED at Anchorage, Alaska this 7th day of September, 2012.

*/s/ Sharon L. Gleason*
United States District Judge